12-10190.131-JCD											February 11, 2014

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

```
BLU PERSPECTIVE, L.L.C.,         )
                                 )
        Plaintiff,                )
                                 )
        v.                        )      No. 12 C 10190
                                 )
D & D TOOLING & MANUFACTURING, INC.,)
                                 )
        Defendant.                )
```

## MEMORANDUM OPINION

Before the court is defendant's motion to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which is granted for the reasons explained below.

## BACKGROUND

Plaintiff, Blu Perspective L.L.C. ("Blu"), brings this action against defendant, D & D Tooling and Manufacturing, Inc. ("D & D"), for breach of contract and unjust enrichment. Blu describes itself as a "consulting and specialty services corporation" that provides a variety of services, including "sorting and containment project work." (First Am. Compl. ¶ 8.) It explains that "'sorting' refers to the act of physically sorting, from a large volume of individual items or parts, those that are conforming to the customer specifications and those that are not," and that "'containment' refers to the act of physically separating conforming and non-conforming items or parts, in order to identify and separate

commercially salable items from those that are problematic or defective." (First Am. Compl. ¶¶ 10-11.)

Plaintiff's allegations are generally as follows. "[A]t some point in time," D & D entered into a contract to supply seat-belt brackets to Johnson Controls, Inc. ("Johnson"), an auto-parts maker that is not a party to this case. (First Am. Compl. ¶¶ 18.) In March 2012, Johnson told D & D that it had found a number of defects in the brackets, and it ordered "immediate inspection of all brackets supplied by D & D." Johnson then contacted Blu, "and with the knowledge and consent of D & D, instructed Blu to mobilize to [Johnson's] facilities to perform . . . a 'containment and sort' project." (First Am. Compl. ¶¶ 25, 27-28.) In April 2012, "Blu provided D & D with cost estimates for the seat belt containment project, and a PO was issued by D & D for that project." (First Am. Compl. ¶ 31.)

It is further alleged that Blu's "initial estimates about the scope of the project" were "ultimately super[s]eded by the project needs . . . thus expanding the initial scope of the project." (First Am. Compl. ¶ 40.) Blu inspected more than 200,000 parts "with the knowledge, consent and participation of employees at both [Johnson] and D & D." (First Am. Compl. ¶¶ 44-45.) Although Blu performed "all services requested and necessitated by the project," and D & D "voluntarily paid for several invoices" that Blu issued to D & D in mid-2012, D & D "has failed and refused to pay Blu" for

several outstanding invoices. (First Am. Compl. ¶¶ 49, 53-54, 63.) Blu seeks compensatory damages in the amount of $103,980.13.

Count I of the First Amended Complaint is a claim for breach of oral contract. Count II alleges breach of contract implied in fact. Count III is an unjust enrichment claim. D & D moves to dismiss the First Amended Complaint for failure to state a claim.

## DISCUSSION

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 556 (2007)). Although we must accept as true all factual allegations in the complaint, we need not accept as true its legal conclusions. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The Court of Appeals for the Seventh Circuit has addressed the "plausibility" standard as follows:

> The Court said in Iqbal that the "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." This is a little unclear because plausibility, probability, and possibility overlap. Probability runs the gamut from a zero likelihood to a certainty. What is impossible has a zero likelihood of occurring and what is plausible has a moderately high likelihood of occurring. The fact that the allegations undergirding a claim could be true is no longer enough to save a complaint from being dismissed; the complaint must establish a nonnegligible probability that the claim is valid; but the probability need not be as great as such terms as "preponderance of the evidence" connote.

In re Text Messaging Antitrust Litig., 630 F.3d 622, 629 (7th Cir. 2010) (citation omitted). In Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010), the Seventh Circuit provided this guidance: "[T]he plaintiff must give enough details about the subject-matter of the case to present a story that holds together."

**A.   Count I (Breach of Oral Contract)**

Under Illinois law,[1] "a plaintiff looking to state a colorable breach of contract claim must allege four elements: (1) the existence of a valid and enforceable contract; (2) substantial

---

[1] In the First Amended Complaint, Blu stated that "[t]he last physical act of the plaintiff Blu pursuant to the agreements outlined herein took place in the State of Alabama, so for purposes of choice-of-law considerations, Blu believes that Alabama law governs this dispute." (First Am. Compl. ¶ 7.) However, Blu, like D & D, cites *Illinois* law in its brief on the instant motion. Therefore, it has waived any objection to choice of law, and we will apply the substantive law of the state of Illinois. See ECHO, Inc. v. Whitson Co., 52 F.3d 702, 707 (7th Cir. 1995) (recognizing that "[w]here neither party argues that the forum state's choice of law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law."); Vukadinovich v. McCarthy, 59 F.3d 58, 62 (7th Cir. 1995) (choice of law is normally waivable).

performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." Reger Dev., LLC v. Nat'l City Bank, 592 F.3d 759, 764 (7th Cir. 2010) (internal quotation marks omitted) (citing W.W. Vincent & Co. v. First Colony Life Ins. Co., 814 N.E.2d 960, 967 (Ill. App. Ct. 2004)). "For an oral contract to exist, the parties must have had a meeting of the minds with respect to the terms of the agreement and must have intended to be bound to the oral agreement." Podolsky v. Alma Energy Corp., 143 F.3d 364, 369 (7th Cir. 1998); see also Leavell v. Dep't of Natural Res., 923 N.E.2d 829, 841 (Ill. App. Ct. 2010) ("Oral agreements are binding so long as there is an offer, an acceptance, and a meeting of the minds regarding the terms of the agreement."). In order for a contract to be binding and enforceable, its terms must be definite and certain. Vandevier v. Mulay Plastics, Inc., 482 N.E.2d 377, 380 (Ill. App. Ct. 1985).

D & D contends that Blu has failed to state a claim for breach of oral contract because there are no facts alleged as to the specific terms of the alleged contract or that allow a reasonable inference that there was a meeting of the minds between D & D and Blu regarding the sorting and containment services. We agree. The allegations fail to tell a story that allows us to reasonably infer that Blu and D & D had a meeting of the minds on definite contract terms. In fact, the allegations are so weak that we are not even able to infer that D & D entered into *any* oral contract with Blu.

The complaint's "general allegations" are that Johnson, not D & D, gave Blu its initial marching orders. (First Am. Compl. ¶ 28.) It is alleged that Blu then "provided D & D with cost estimates" for the sorting and containment project, which were "ultimately super[s]eded by the project needs, . . . thus expanding the initial scope of the project." (First Am. Compl. ¶¶ 31, 40.) It is also alleged that "a PO was issued by D & D" for the project, which we assume refers to a purchase order, but there are no allegations as to whom the purchase order was issued, what its terms were, or whether Blu considers the purchase order to have been an offer. The allegation that "D & D knew with certainty that Blu was conducting, in relation to the identified seat belt bracket issue(s), that D & D was to pay for all services rendered by Blu," First Am. Compl. ¶ 32, is not only confusing, but fails to allege a meeting of the minds on definite contractual terms. The specific allegations also attempt, but fail, to set out a meeting of minds. Plaintiff has failed to allege definite contractual terms or who agreed with whom to be bound. The allegations dance around the critical element of a meeting of minds but ultimately fail to allege one. Count I will therefore be dismissed without prejudice.

**B.   Count II (Breach of Contract Implied in Fact)**

In Count II, Blu alleges that D & D breached a contract implied in fact. An implied-in-fact contract is "one in which a contractual duty is imposed by a promissory expression which may be

inferred from the facts and circumstances and the expressions on the part of the promisor which show an intention to be bound." Kohlenbrener v. N. Suburban Clinic, Ltd., 826 N.E.2d 563, 567 (Ill. App. Ct. 2005). This type of contract "arises where the intention of the parties is not expressed, but an agreement in fact creating an obligation is implied or presumed from their acts; in other words, where circumstances under common understanding show a mutual intent to contract. A contract implied in fact must contain all elements of an express contract, and there must be a meeting of the minds." Foiles v. N. Greene Unit Dist. No. 3, 633 N.E.2d 24, 27 (Ill. App. Ct. 1994).

Count II will be dismissed without prejudice because it fails to state a claim for breach of a contract implied in fact; like Count I, it alleges no facts from which we can reasonably infer that there was an offer or acceptance or a meeting of minds. In Blu's brief in response to D & D's motion, it maintains that it has sufficiently alleged a breach of contract implied *in law*, which is different from a contract implied in fact.[2] In Illinois, a contract implied in law, also known as quasi-contract, is the basis for an unjust enrichment claim. See Premier Elec. Constr. Co. v. LaSalle Nat'l Bank, 477 N.E.2d 1249, 1257 (Ill. App. Ct. 1984); People ex rel. Hartigan v. E & E Hauling, Inc., 607 N.E.2d 165, 177

---

[2]/ We also note that Blu refers to Counts II and III as having been pleaded "in the alternative" to Count I, Pl.'s Resp. at 5, 7, but the First Amended Complaint does not so indicate.

(Ill. 1992). If Count II is intended to be a claim for breach of contract implied in law, it would be dismissed as duplicative of Count III, which alleges unjust enrichment.

**C.     Count III (Unjust Enrichment)**

A claim for unjust enrichment under Illinois law "exists when a defendant (1) receives a benefit, (2) to the plaintiff's detriment, and (3) the defendant's retention of that benefit would be unjust." TRW Title Ins. Co. v. Sec. Union Title Ins. Co., 153 F.3d 822, 828 (7th Cir. 1998) (citing HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc., 545 N.E.2d 672, 679 (Ill. 1989)). D & D argues that Blu has failed to state an unjust enrichment claim because there are no allegations indicating that D & D received a benefit conferred by Blu or that its retention of any benefit would be unjust.

Paragraph 79 of the First Amended Complaint, which alleges that "D & D voluntarily and knowingly received a benefit derived directly from Blu's work at the [Johnson] facility," is conclusory. Blu has alleged that D & D knew about the services Blu was providing and participated in the process, that there were communications about the work among the three entities, and that D & D never objected. But it is also alleged that *Johnson*, not D & D, instructed Blu to do the work at Johnson's facility, First Am. Compl. ¶ 28, and that *Johnson* "desire[d]" that the work be done, First Am. Compl. ¶ 78. These allegations undermine Blu's

conclusory allegation that it was D & D that received a benefit. Without more, we cannot reasonably infer that Blu conferred a benefit on D & D, as opposed to Johnson. Even if we could infer that Blu conferred a benefit on D & D by providing sorting and containment services, there are insufficient facts alleged from which we can infer that retention of the benefit would be unjust. Given the details alleged about Johnson's pivotal and controlling role in the matter, Blu's story that it expected payment from D & D, not Johnson, for the sorting and containment services does not hold together. Accordingly, Count III will be dismissed without prejudice.

## **CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss the complaint [37] is granted, and the First Amended Complaint is dismissed without prejudice. Plaintiff's motion for a ruling on defendant's motion [45] is granted. If plaintiff believes it can cure the defects in its complaint by amendment, it may file a Second Amended Complaint by February 28, 2014. A status hearing is set for March 5, 2014 at 10:30 a.m.

DATE:        February 11, 2014

ENTER:       _____
             John F. Grady, United States District Judge